STATE OF VERMONT

SUPERIOR COURT ENVIRONMENTAL DIVISION
Docket No. 81-7-15 Vtec

| Okemo Mtn. School Fitness Facility Conditional Use and Site Plan Approval | DECISION ON THE MERITS |
|---|---|

**Decision in On-the-Record Appeal**

In this on-the-record proceeding, Appellants Steve Rolka, Joseph Rolka, and Sports Odyssey, Inc. ("Appellants") appeal a June 11, 2015 decision by the Town of Ludlow Development Review Board granting an application for a conditional use permit to Okemo Tutorial Program, Inc. d/b/a Okemo Mountain School for the construction of a new training facility building in Ludlow, Vermont. Appellants are represented by David Grayck, Esq., OMS is represented by Lawrence Slason, Esq., and the Town of Ludlow ("the Town") is represented by J. Christopher Callahan, Esq.

**Background**

Okemo Tutorial Program, Inc. d/b/a Okemo Mountain School ("OMS" or "Applicant"), proposes construction of a new building to house a training facility adjacent to OMS's existing classroom building at 53 Main Street in the Village of Ludlow, Vermont. The existing classroom and proposed training facility are sited on a 1.987-acre lot located partially in the Village Residential-Commercial District ("R-C District") and partially in the Ludlow Preservation District ("L-P District").

OMS first applied for conditional use and preservation district design review approval on August 14, 2014. DRB Decision, June 11, 2015 ("Decision") at 1. The application was assigned number 86/87-155-CU, Amendment No. 2. The Town of Ludlow Development Review Board ("the DRB") held a hearing on the application on September 8, 2014, and issued a decision granting design review approval and issuing a conditional use permit on October 9, 2014. Appellants' Printed Case at 27–30. Neighboring landowner Steve Rolka appealed the decision to

1

this Court, which docketed the matter as 160-11-14 Vtec.[1]  We then remanded the case back to the DRB for further proceedings, by agreement of the parties, on January 21, 2015.  Appellants' Printed Case at 31–32.

The DRB's October 9, 2014 decision was issued pursuant to the *Village of Ludlow, Vermont Zoning and Flood Hazard Regulations* adopted January 3, 2006, amended September 5, 2006 ("the 2006 Regulations").[2]  OMS Printed Case, tab G.  The Village of Ludlow announced proposed amendments to the 2006 Regulations on January 20, 2015, and the Village Board of Trustees adopted the amendments on April 8, 2015.  ("the 2015 Regulations"); OMS Printed Case, tab F; Decision at 1.

On March 12, 2015, OMS submitted a revised application for conditional use approval, site plan review, and design review.  The application package included: a cover letter by Atty. Slason; a one-page, completed form titled *Town & Village Zoning/Building Application*; and a one-page, completed form titled *Town & Village Application for a Hearing Before the Development Review Board*.

There was also an attachment to the application: a 23-page narrative document titled *Town and Village of Ludlow, Vermont Information for Public Hearing before the Development Review Board*.  Appellants' Printed Case at 34–60.  The parties dispute whether this application attachment was actually admitted into evidence by the DRB and, if so, whether that evidentiary determination was proper.  We address that legal challenge below.

The cover letter of the new application references application number 86/87-155-CU, Amendment No. 2.  The letter indicated that OMS understood that the application would be considered under the 2006 Regulations.

The application was assigned number 86/87-155-CU, Amendment No. 3.  Decision at 1.

OMS sent an exhibit list and six copies of Exhibits 1–25 to the Zoning Administrative Officer, and on March 23, 2015, sent the same to Atty. Grayck.  OMS Printed Case, tab A.

---

[1]  Appellants, in their brief, move for the Court to take judicial notice of "Docket No. 160-11-14 Vtec and the filings submitted therein" to establish the procedural record.  We hereby **GRANT** Appellants' request.

[2]  The October 9, 2014 decision states that the application is reviewed under the "Town of Ludlow's Zoning and Flood Hazard Regulations {Amended 02 December 2007}".  This appears to be an error.  The regulations then in effect were the 2006 Regulations, and we assume that the DRB analyzed the application under the 2006 Regulations.

Exhibit 1 is the *Town & Village Zoning/Building Application*, Exhibit 2 is the *Town & Village Application for a Hearing Before the Development Review Board*, and Exhibit 3 is the *Town and Village of Ludlow, Vermont Information for Public Hearing before the Development Review Board*.

Exhibit 5 is a site plan titled *Site Plan – Proposed OMS Training Facility, Developed Conditions, Sheet 2 (3/11/2015)*. OMS Printed Case, tab C. The site plan had been revised from an earlier iteration with a reconfigured parking area, additional landscaping and fencing on the westerly boundary near the Rolka property, and additional utility details, lighting details, and dimensional details. Decision at 2.

Exhibit 5A is a further, and final, revised site plan dated May 5, 2015 which adds a legend to show details of the roof trench drain. OMS Printed Case, tab D; Decision at 2.

The DRB held a two-part public hearing on the revised application on April 13 and May 11, 2015. At the outset of the April 13 hearing, Atty. Callahan introduced the matter and stated that "both sides have agreed to submit new evidence as though this were a new hearing." Transcript 4/13/2015 at 4. Later in the hearing, Atty. Callahan stated that the issue was before the DRB on remand, by agreement of the parties, that a "new application and new evidence would come in," again by agreement, and that based on this agreement, the DRB determined that the 2015 Regulations would apply to the application. Transcript 4/13/2015 at 27–28.

Atty. Slason noted that he just learned the regulations had been amended and indicated that the proposed project complied with both the pre- and the post-amendment regulations. Id. at 7–9. Atty. Grayck made an objection in relation to the regulations, although a break in the record leaves the nature of the objection unclear. Id. at 10.

OMS presented three witnesses at the two-day hearing: the OMS Headmaster, the Project Engineer, and the Project Architect. All exhibits were admitted, although Exhibit 3 was admitted over Appellants' objection.

At the close of the hearing on May 11, the DRB asked OMS to provide an engineer's report on the design of the proposed roof trench drain. The DRB also invited OMS and adjoining landowners to submit proposed Findings of Fact and Conclusions of Law. OMS and Appellants filed proposed Findings of Fact and Conclusions of Law, and OMS filed the engineer's report as Exhibit 7, along with a final exhibit list. OMS Printed Case, Tab E.

3

The DRB issued its Decision on the application on July 11, 2015. Noting the uncertainty as to whether the application falls under the 2006 Regulations or the 2015 Regulations, the Decision concludes that the proposed project complies with both sets of regulations. Decision at 3. Specifically, the Decision concludes that the proposed plan conforms with conditional use and design review standards, and approves the site plan set out in Exhibit 5A. Id. at 18–23.

While the DRB found the proposed project to be in full compliance with the 2006 and 2015 Regulations, the DRB also concluded that the project does not need to fully comply with those regulations because it is part of a school. OMS is licensed by the Vermont Department of Education. Licensed schools are subject to limited zoning review as set out in 24 V.S.A. § 4413(a)(1)(B). In its *Town and Village of Ludlow, Vermont Information for Public Hearing before the Development Review Board* filing, OMS included a non-waiver provision reserving this statutory right to limited review. Appellants' Printed Case at 42. In its July 11, 2015 decision, the DRB found that the proposed facility is an integral part of the OMS program, and as such, is subject to limited review under § 4413(a)(1) and various provisions of the 2006 and 2015 Regulations. Decision at 5, Finding 9. Nevertheless, the DRB concluded that the proposed facility fully conforms with the 2006 and 2015 Regulations. Id. at 17, conclusion of law 2.

Appellants filed a Notice of Appeal with this Court on July 8, 2015 and a Statement of Questions on July 28, 2015.

## Modification of the Record

At some point after this appeal was filed, it came to the attention of the parties that a portion of the May 11, 2015 hearing had been inadvertently omitted from the transcript submitted to us as part of the record on appeal. OMS obtained a video recording of the hearing from a local television station, and used that recording to create a supplemental transcript that would complete the omitted portion. Appellants filed a motion objecting to the submission of the supplemental transcript directly to the Court, and asked the Court to strike the submissions. We granted that motion by Entry Order on September 30, 2016.

In that Order we also outlined a process in which, pursuant to V.R.A.P. 10, Appellants would serve their objections or proposed amendments to the proposed correction of the record

4

to OMS, and OMS would then send the proposed correction, together with Appellants' objections and proposed amendments, to the DRB for settlement and approval.

Appellants filed an Objection with the Court. This filing objected to the process generally, but did not specifically object to or put into question the accuracy of the proposed supplemental transcript. We held a hearing on that Objection on October 27, 2016, in which we instructed the parties that the Objection would be considered as a Motion to Reconsider our September 30, 2016 Entry Order. We subsequently denied the motion on the record.

On October 21, 2016, OMS sent the proposed supplemental transcript to the DRB for review. OMS had previously sent the DRB the video recordings on which the supplemental transcript was based. Christopher Callahan, acting as attorney for the DRB, filed a Certification with the Court on October 27, 2016, confirming that the proposed supplemental transcript is an accurate transcript of the portion of the hearing inadvertently omitted from the original official transcript.

Pursuant to V.R.A.P. 10(d) and (f), we accept the supplemental transcript as part of the record. To the extent that Appellants have renewed their motions to strike, we **DENY** those motions here, and proceed with our review of the record, as supplemented, and the parties' briefs.

### Standard of Review

In an on-the-record appeal, we consider only the decision below, the record made before the municipal panel, and the briefs submitted by the parties. In re Saman ROW Approval, No. 176-10-10 Vtec, slip op. at 1 (Vt. Super. Ct. Envtl. Div. Sept. 2, 2011) (Durkin, J.).

We do not take new evidence or complete our own determination of the facts. Instead, we review the municipal panel's findings of fact, which must "explicitly and concisely restate the underlying facts that support the decision." See 24 V.S.A. § 1209(a) and (b). We affirm the DRB's factual findings if they are supported by substantial evidence in the record. See In re Stowe Highlands Resort PUD to PRD Application, 2009 VT 76, ¶ 7, 186 Vt. 568. In examining whether there is substantial evidence in the record, we do not assess the credibility of witness testimony or reweigh conflicting evidence in the record. See Devers-Scott v. Office of Prof'l Regulation, 2007 VT 4, ¶ 6, 181 Vt. 248; In re Appeal of Leikert, No. 2004-213, slip op. at 2 (Vt. Nov. 2004)

5

(unpublished mem.). We simply inquire whether the record includes relevant evidence that a "reasonable person could accept . . . as adequate" support for the panel's factual findings. See Devers-Scott v. Office of Prof'l Regulation, 2007 VT 4, ¶ 6, 181 Vt. 248 (quoting Braun v. Bd. of Dental Exam'rs, 167 Vt. 110, 114 (1997)).

We must then determine whether the municipal panel's findings of fact support the panel's legal conclusions. We will review the DRB's legal conclusions without deference unless such conclusions are within the DRB's area of expertise. Stowe Highlands, 2009 VT 76, ¶ 7.

Our review is further limited to issues raised by Appellants in their Statement of Questions. See V.R.E.C.P. Rule 5(f) ("The appellant may not raise any question on the appeal not presented in the statement [of questions] as filed . . ..") It is with these legal standards in mind that we review each of the legal issues that Appellants have preserved for our review by their Statement of Questions.

#### Discussion

I. **Whether the DRB and its counsel violated MAPA or Appellants' due process rights by hostile conduct**

A number of Appellants' Questions allege that "hostile conduct" on the part of the DRB violated the Municipal Administrative Procedure Act ("MAPA"), 24 V.S.A. Chapter 36, and due process. Question 1 includes a general allegation of due process and MAPA violations. Questions 5–9 and 17 ask whether the DRB and its counsel violated Steve Rolka's, and other Appellants', due process rights by hostile conduct. Questions 8 and 9 allege due process violations suffered by Joseph Rolka and Sports Odyssey, Inc. related to their rights for an opportunity to be heard, a fair and impartial process, and a neutral and impartial DRB.[3]

Appellants submit that the DRB hearings were "riddled with . . . gross due process violations." Appellants' Revised Brief at 1. These violations generally allege that the overall tone of the hearing and hostile treatment of Atty. Grayck, warrant reversal of the DRB's decision. They argue that the April 13, 2015 hearing took on a hostile tone when Atty. Grayck objected to the admission of Exhibit 3. Id. At that time, Atty. Grayck insisted that if Exhibit 3 were admitted he

---

[3] Insofar as Questions 8 and 9 allege insufficient notice, this issue has not been briefed and we therefore do not address it.

6

would have to cross-examine Atty. Slason, because the exhibit is a document signed by Atty. Slason and appears to contain information related to engineering or landscaping expertise. Id. Atty. Callahan responded with some confusion, stating that Exhibit 3 "looks like just the typical zoning application." Transcript 4/13/2015 at 12. He noted that it was the "general procedure" of the board—and other boards—to allow the underlying zoning application into evidence, adding that he hoped Atty. Grayck was not simply objecting "to obfuscate and delay." Id. at 13. Atty. Grayck argued that Exhibit 3 must be withdrawn, and suggested that the DRB call a break and review the rule set out in 24 V.S.A. § 1206(b). Id. at 14. Atty. Callahan asked Atty. Slason if he had "anything to say." Id. at 15. Atty. Slason declined to withdraw the exhibit and stated that it is part of the underlying application required by the Town of Ludlow. Id. at 15. Atty. Grayck requested a ruling from the board on his objections, and the Chairman stated, "[Y]our objections are duly noted and we're going to move on." Id. at 16.

Basic due process principles of impartiality and fair play must be observed in municipal zoning hearings. In re JLD Properties of St. Albans, LLC, 2011 VT 87, ¶ 6, 190 Vt. 259. While a municipal decision-making body "enjoys a presumption of impartiality," Id. ¶ 8 (citing Ball v. Melsur Corp., 161 Vt. 35, 39 (1993)), a decisionmaker can be disqualified from the proceeding by demonstrating a "deep-seated favoritism or antagonism that would make fair judgment impossible," Id. ¶ 7 (quoting Liteky v. United States, 510 U.S. 540, 555 (1994)). Disqualification for bias is constitutionally required "only in 'the most extreme of cases.'" Id. ¶ 9 (quoting Aetna Life Ins. Co. v. Lavoie, 475 U.S. 813, 821 (1986)).

JLD Properties, which involved an appeal over permits for a Wal-Mart in St. Albans, was such an extreme case. Id. ¶ 9. There, the DRB chair "was a member of the Town's selectboard, vigorously supported the project, and spoke on behalf of himself and the board at the DRB hearings." Id. ¶ 8. While this was not a "per se" conflict of interest, it may have appeared as such. Id. Furthermore, the DRB chair "expressed open contempt for [an interested party] group as outsiders and elitists, implying that they were illegitimate participants in the proceedings before the board." Id. ¶ 9. This conduct compromised "the appearance of fairness" and showed a fair judgment would be impossible, thus violating the interested party's due process rights. Id. ¶¶ 8–9. Disqualification in this case was warranted. Id. ¶ 13.

We also addressed due process challenges at different stages of litigation in JLD Properties.

In one decision, a DRB member wore a hat during the hearings with the words "St. Albans Town Needs Wal-Mart." In re JLD Properties – Wal-Mart, St. Albans, No. 132-7-05 Vtec, slip op. at 2 (Vt. Envtl. Ct. Sep. 5, 2006) (Wright, J.). We held that "not only is it important that adjudicatory hearings actually be fair and impartial, they also must appear to be fair and impartial, both to participants and to observers," and that by wearing the hat, the DRB member "destroyed the appearance of fairness that due process requires and to which the stakeholders at the hearing were entitled, whether or not he also departed from the reality of giving the application a fair hearing." Id. at 6 (citations omitted) (emphasis in original).

In a later decision, an interested party alleged that there may have been a conflict of interest and procedural errors in a hearing before the St. Albans DRB that constituted due process violations. In re JLD Properties – Wal-Mart, St. Albans, Nos. 242-10-06, 92-5-07, 116-6-08 Vtec, slip op. at 16–17 (Vt. Envtl. Ct. Mar. 16, 2009) (Durkin, J.). We distinguished these circumstances from those set out in the September 5, 2006 decision because in that earlier case the DRB chair's act of wearing the hat was an "overt act[] . . . so egregious that [it] call[ed] into question the public's view of the fundamental fairness and impartiality of the[] proceedings." Id. at 17. We explained that "subtle procedural errors" alleged in pleadings for the March 16, 2009 decision are different because they "do not shake the public confidence in the same way that overt acts do." Id.

Appellants here argue that Atty. Callahan's suggestion that Atty. Grayck might be trying to obfuscate or delay the proceedings was improper and prejudicial to the point that it violated Appellants' rights under MAPA and due process.

We disagree. Atty. Callahan believed that Exhibit 3 was part of the very permit application for which the hearing was convened, and was therefore confused as to why Atty. Grayck contested its admission. This interaction did not rise to the level of a due process violation, such as the DRB expressing "open contempt" for a party. JLD Properties, 2011 VT 87, ¶ 9. Nor did it create an appearance of impartiality. Atty. Callahan was simply trying to determine why Atty.

Grayck was objecting to the admission of an item that would normally be introduced in similar hearings as a matter of course.

Appellants further contend that when Atty. Callahan declined to call a break to review § 1206, as Atty. Grayck suggested, and asked Atty. Slason for input instead, he "took over the hearing process and created a hearing room filled with open hostility towards the Appellants through a personal attack on their lawyer." Appellants' Revised Brief at 10. They add that OMS "took strategic advantage of the hostile environment it created . . . to inflame the DRB in anger against Appellants" and that the DRB in turn effectively ceded control of the hearing to Attys. Callahan and Slason. Id. at 13. Appellants point to an exchange where Atty. Slason asked the OMS Head of School about traffic implications of the proposed project, and Atty. Grayck objected. Transcript 4/13/2015 at 22. Atty. Slason told the Head of School that she could answer, and Atty. Grayck said, "Excuse me. I'm posing an objection to the board. I'd like a ruling on it." Id. The Chairman said that the objection was "noted," and only when Atty. Grayck asked whether it was overruled or sustained did the Chairman say that it was overruled. Id. Appellants note a second incident when Atty. Grayck asked to cross examine a witness, and Atty. Slason stated, "I'm not surprised, but go ahead. I don't have any objection." Transcript 4/13/2015 at 24. The Chairman then said, "Okay," which this Court perceives as an attempt by the Chair to diffuse the tension that he had observed between the attorneys. Id. at 25. Appellants point to this as a second example of the DRB ceding control of the hearing.

We do not agree that the DRB ceded control of the hearing. A review of the transcript shows that the DRB gave Atty. Slason the opportunity to present his case, and that it also allowed Atty. Grayck to actively participate and advocate on behalf of his clients. Atty. Grayck was able to examine each witness, including regarding specific exhibits at different points during Atty. Slason's direct examination. See, e.g., Transcript 4/13/15 at 49, 69. We also note that after OMS finished presenting its case, the DRB chair invited Atty. Grayck to express any concerns that he or his clients wanted to bring to the DRB's attention. Transcript 5/11/15 at 50. This belies the assertion that Atty. Grayck was being sidelined or stonewalled at the hearing, or that DRB handed control of the hearing to OMS.

Appellants go on to argue that they were further prejudiced in the hearing by "multiple violations" of MAPA, specifically at 24 V.S.A. § 1206(b), which provides:

> The rules of evidence as applied in civil cases in the superior courts of this state shall be followed. When necessary to ascertain facts not reasonably susceptible of proof under those rules, evidence not admissible under those rules may be admitted if it is of a type commonly relied upon by reasonably prudent people in the conduct of their affairs.

Appellants point to a number of actions by the DRB which they allege led to MAPA and due process violations in relation to evidentiary rulings, including: refusing to rule on Atty. Grayck's objections and refusing to allow Atty. Grayck to challenge that refusal; failing to withdraw Exhibit 3, rule on the admissibility of Exhibit 3, or allow Atty. Grayck to cross-examine Atty. Slason; stating that they were going to "move on," which foreclosed Appellants from moving to disqualify Atty. Slason under the Rules of Professional Conduct, which prohibit a lawyer from acting as advocate in a matter in which he is likely to be a necessary witness; and failing to state whether evidence was admitted under the Rules of Evidence or the alternative procedure allowed in 24 V.S.A. §1206(b), which deprived them of the opportunity to contest the grounds for admission.

We do not believe that this conduct involved any overt act that would put the DRB's fairness or impartiality into doubt. The DRB statement that they were going to "move on" demonstrates their intention to allow Exhibit 3 into evidence and to overrule Atty. Grayck's objection. An adverse evidentiary ruling does not constitute a MAPA or due process violation. Any failure to explicitly state that Atty. Grayck's objections were overruled are more akin to "subtle procedural errors" than due process violations that would warrant remanding or reversing the decision below. As discussed below, there is no requirement that the DRB explicitly state the grounds for admission of an exhibit, and we see no violation of procedural rules in the DRB's failure to do so. Finally, nothing in the transcript suggests that Atty. Grayck was prevented from asserting that offering Exhibit 3 violated the Rules of Professional Conduct. As noted above, the DRB explicitly invited Atty. Grayck at the end of the hearing to voice any concerns. We conclude that the DRB and its attorney did not violate MAPA or Appellants' due process rights in the conduct of these hearings and therefore answer Appellants' Questions 1, 5–9 and 17 in the negative.

10

## II. Whether the DRB and its counsel violated MAPA or Appellants' due process rights by procedural defects in evidentiary rulings

Questions 2–4 and 27 raise the issue of whether the DRB properly admitted evidence and properly ruled on objections to evidence.

Appellants argue in their brief that "the DRB routinely failed to rule on evidentiary objections, or made a ruling but did not state the ruling on the record, or made a ruling to admit evidence but did not state what was the basis for admission." Appellants' Revised Brief at 23. They add that Exhibit 3 in particular could not meet the standards for admissibility. Again, this argument relates to § 1206(b), but while elsewhere Appellants argue that the DRB's failure to adhere to § 1206(b) demonstrates prejudice towards Appellants, here they argue that the failure to follow § 1206(b) is itself reversible error.

As set out above, § 1206(b) requires the DRB to follow the Vermont Rules of Evidence, but it also gives the DRB some discretion to admit "evidence not admissible under those rules" if it is "of a type commonly relied upon by reasonably prudent people in the conduct of their affairs" and it is admitted "to ascertain facts not reasonably susceptible of proof under those rules."

There is little case law explaining this language, although we have noted in the past that the same standard controls the admission of evidence in hearings before administrative agencies. 3 V.S.A. § 810(1)[4]; In re Brandon Plaza Conditional Use Permit, No. 128-8-10 Vtec slip op at 13 (Vt. Super. Ct. Envtl. Div. Mar. 26, 2012) (Walsh, J.). Referring to § 810, the Supreme Court has explained that "[g]enerally the rules of evidence are relaxed in administrative proceedings, because of an administrative law policy to receive all evidence which may be material or relevant." In re Desautels Real Estate, Inc., 142 Vt. 326, 335 (1982) (citing 2 Am. Jur. 2d Administrative Law § 378; 73 C.J.S. Public Administrative Bodies and Procedure § 122).

Appellants refer to "routine[] fail[ures]" by the DRB to rule on objections, state rulings on the record, and state the basis for admission. However, the record does not demonstrate routine

---

[4] 3 V.S.A. § 810(1) reads, in part:

> Irrelevant, immaterial, or unduly repetitious evidence shall be excluded. The Rules of Evidence as applied in civil cases in the Superior Courts of this State shall be followed. When necessary to ascertain facts not reasonably susceptible of proof under those rules, evidence not admissible thereunder may be admitted (except where precluded by statute) if it is of a type commonly relied upon by reasonably prudent men in the conduct of their affairs.

failures.  For example, Atty. Grayck objected twice to questions Atty. Slason posed to a witness, and the DRB promptly overruled both objections.  Transcript 4/13/15 at 22, 23.  Atty. Grayck objected to Exhibit 5A, but then later withdrew his objection.  Transcript 5/11/15 at 41, 48.  Atty. Grayck asked the DRB to take official notice of the documentation behind the passage of the 2015 Regulations, and the DRB reserved making a ruling.  Transcript 4/13/15 at 29–30.  A number of exhibits were admitted at the close of the first hearing, without the DRB stating the basis for admission and without objections.  Transcript 4/13/15 at 83, 89–92.

In short, the failures alleged by Appellants are not evident in relation to most of the evidence presented.  In fact, most of the exhibits where admitted at hearing once Attorney Grayck advised that Appellants either had no objection or stipulated to their admission.

The alleged failures therefore presumably refer to objections to Exhibit 3.  Appellants objected to this exhibit at the start of the first hearing.  Transcript 4/13/15 at 12.  Atty. Callahan indicated that Exhibit 3 is part of the zoning application, and that it is "the general procedure" of the DRB to admit the zoning application in question.  Id.  at 12–13.  The DRB did not explicitly state whether this objection was overruled or sustained, but rather that the objection was noted and the DRB would "move on" with the hearing.  Id. at 16.  OMS takes these statements to indicate that the DRB took "official notice" of Exhibit 3.  Appellants repeated their objection to Exhibit 3 near the close of the second hearing.  Transcript 5/11/2015 at 37B.  The DRB did not rule on this objection during the hearing.  However, in its decision, the DRB states that Exhibits 1–25 were admitted into evidence.  Decision at 2.

Appellants argue that: (1) Atty. Slason's "sponsorship" of Exhibit 3 violates § 1206(b) and the Vermont Rules of Professional Conduct; (2) the DRB did not properly admit Exhibit 3; and (3) the DRB improperly relied on Exhibit 3.

We address the third point—alleging improper reliance—first.  Appellants appear to argue that because the DRB stated that all exhibits were admitted, the DRB relied on Exhibit 3 in its decision.  Appellants' Reply at 6–7.  Appellants fail to point out any specific part of the Decision that relies on Exhibit 3.  Our own review of the DRB decision revealed no such reliance.

Even if an exhibit is admitted in error, that error is harmless unless the objecting party shows that reliance on the exhibit resulted in prejudice.  In re Edgar North Shore Drive Variance

12

Application, No. 163-11-11 Vtec, slip op. at 8–9 (Vt. Super. Ct. Envtl. Div. Sep. 28, 2012) (Walsh, J.) (citing In re Quechee Lakes Corp., 154 Vt. 543, 557 (1990)). Here, Appellants have not shown that the DRB relied on Exhibit 3 or any prejudice that resulted from such reliance. Their current objections to Exhibit 3 are therefore largely without merit.

To Appellants' first point, we agree with Attys. Callahan and Slason that Exhibit 3 is part of the zoning application. A zoning application must, of course, be considered by the panel tasked to approve or deny that application. In such a context, the application is understood to be offered not for the truth of the matter therein. Instead, the applicant would be expected to present other evidence to support the assertions set out in the application. With this in mind, we do not agree that Exhibit 3 was offered as evidence of compliance with zoning criteria, as Appellants contend. Appellants' Reply at 6. Rather, we consider the document to be similar to an opening argument, in which the applicants have the opportunity to present why they believe the proposed project complies with the relevant regulations.[5] With this in mind, we do not believe that offering a narrative as part of a zoning application violates either § 1206(b) or the Vermont Rules of Professional Conduct.

To Appellants' second point, we agree with OMS that Exhibit 3 was admitted into evidence. We take it as implicit in the DRB's statement that Appellants' objection was noted, and that the hearing would "move on," that the DRB intended to accept the document into evidence. This is borne out by the statement in the Decision that all exhibits were admitted into evidence. Even if the exhibit had not been properly admitted, it could still become part of the record if the DRB relied on it in making its decision. See In re Grist Mill Horse Barn Redevelopment Plan, No. 205-9-08 Vtec. slip op. at 7 (Vt. Envtl. Ct. Apr. 13, 2010) (Durkin, J.) (noting that, under V.R.E.C.P. 5(h)(1)(A), the record includes "any writings or exhibits considered by the panel in reaching the decision appealed from"). Again, this is a moot point as Appellants have failed to show that the DRB relied, to Appellants' detriment, on Exhibit 3 in making its decision.

Appellants argue that the DRB committed reversible error by failing to state whether evidence was admitted under the Rules of Evidence or the alternative, discretionary authority

---

[5] As OMS notes in its brief, at 15 n.3, this is similar to the Schedule B narrative attached to Act 250 permit applications. See In re Hamm Mine Reclamation Act 250 Jurisdictional Opinion #2-241, No. 271-11-06 Vtec. slip op. at 3 n.6 (Vt. Envtl. Ct. Sep. 27, 2007) (Durkin, J.).

set out in § 1206(b). They cite no legal authority requiring the DRB to explicitly state the basis for the admission of evidence. We therefore do not see this as grounds for reversal or remand. In addition, and again, this is a moot point absent a showing of detrimental reliance on the evidence in contention. We conclude that the DRB, with the assistance of its legal counsel, did not violate MAPA or Appellants' due process rights in the manner in which it admitted evidence and ruled on objections to evidence in the conduct of the DRB hearings on the OMS application. We therefore answer Appellants' Questions 2–4 and 27 in the negative.

**III.    Whether OMS violated MAPA by sending exhibits before hearing**

In Question 10, Appellants ask whether MAPA and their due process rights were violated when Atty. Slason sent the exhibits to the DRB prior to the hearing, because the DRB is only allowed to consider evidence offered and admitted at a hearing. Transcript 4/13/2015 at 11; Appellants' Revised Brief at 26.

In support of this argument, Appellants cite § 1206 of MAPA and Petition of Green Mountain Power Corp., 131 Vt. 284, 303–04 (1973), which holds that findings can only be based on properly admitted evidence.

Under MAPA—as discussed above—evidence may come in under the Rules of Evidence or a more relaxed, discretionary basis "when necessary to ascertain facts not reasonably susceptible of proof" under the rules of evidence. 24 V.S.A. § 1206. A DRB decision must state findings of fact "based exclusively on evidence of the record in the contested hearing," and legal conclusions that are based on those findings of fact. 24 V.S.A. § 1209(a)–(c)

Appellants cite no legal authority indicating that the DRB cannot see the exhibits before the hearing, admit those exhibits at the hearing, and then base their findings on those exhibits. Here, all of the exhibits submitted prior to the hearing were later admitted into evidence at the hearing. The DRB then based its written decision on that evidence. There is no suggestion of prejudice related to the DRB considering information submitted outside of the hearing that was not admitted as evidence. In fact, there was no evidence presented that the DRB even considered the exhibits prior to admitting them into evidence.

In addition, we have previously read 24 V.S.A. § 1206(c) to allow pre-hearing filings of documents in order to expedite the proceedings. Appeal of Tepper, et al, No. 225-12-04 Vtec,

slip op. at 7 (Vt. Envtl. Ct. Feb. 8, 2006) (Durkin, J.); see also In re RACDC Retention Pond, No. 62-5-15 Vtec, slip op at 9 – 10 (Vt. Super. Ct. Envtl. Div. Jan. 29, 2013) (Walsh, J.) (indicating that parties may file materials with the DRB prior to a hearing). We conclude that the DRB did not violate MAPA or Appellants' due process rights in its receipt prior to hearing of the exhibits and evidence to be offered at hearing by OMS. We therefore answer Appellants' Question 10 in the negative.

IV. **Which regulations apply**

Questions 11–16 relate to whether DRB violated due process and committed other errors by failing to determine which zoning regulations applied. Question 23, though somewhat confusingly phrased, appears to ask whether the DRB erred in determining which set of Regulations apply, and Question 24 asks whether DRB erroneously concluded that the project was vested under the 2015 Regulations.[6] Questions 18 and 19 ask whether the DRB erred in applying the incorrect regulations.

There was a great deal of confusion at the DRB hearings regarding which version of the zoning regulations would apply to the pending permit application. In the application cover letter, Atty. Slason indicated that he believed the hearing would be governed by the 2006 Regulations. Appellants' Printed Case at 34. At the hearing, Atty. Slason indicated that he had only just learned of the 2015 amendments. Transcript 4/13/2015 at 13. Atty. Callahan stated at the hearing that, based on agreement of the parties that "a new application and new evidence would come in," the DRB determined that the 2015 Regulations would apply, because that is what the parties agreed to. Transcript 4/13/2015 at 28. Atty. Grayck clarified that there had been no such

---

[6] Question 16 asks whether the project must be reviewed under the regulations in effect when construction commenced. Appellants did not brief this question, but only peripherally mentioned in a footnote that construction had commenced. Appellants' Revised Brief at 28 n.8. To the extent that Appellants assert that rights vest when construction commences, we disagree. See In re Taft Corners Associates, Inc., 171 Vt. 135, 142–43 (2000) ("We expressly adopted the 'minority rule' . . . to create a bright line, allowing identification of when rights vest without having to consider the extent to which the landowner has made investments and taken actions in reliance on the permit.") (citing Smith, 140 Vt. at 181–82). In addition, there is no evidence regarding the extent of construction. Id.

Question 28 asks whether the decision must be reversed because the 2015 Regulation is invalid. This question is not briefed, and we therefore do not address it here.

agreement by the parties and then let the matter drop, turning to a request that the DRB take official notice of the procedures leading to the passage of the 2015 Regulations. Id.

In its Decision, the DRB stated that the parties were informed at the hearing that "because they were reviewing a revised application and the proceeding was *de novo*," they would review the application under the 2015 Regulations. Decision at 2. After considering Appellants' objections, the DRB considered the application under both sets of regulations. Id. at 3, 17.

"[A] permit applicant gains a vested right in the governing laws and regulations in existence when a complete permit application is filed." In re Times & Seasons, LLC, 2011 VT 76, ¶ 12, 190 Vt. 163 (citing Paynter 2–Lot Subdivision, 2010 VT 28, ¶ 9, 187 Vt. 637). Pursuant to this rule, a permit application cannot prospectively vest a right in future regulations, or retroactively vest a right in prior regulations. Gould v. Town of Monkton, 2016 VT 84, ¶ 28 (citing Times & Seasons, 2011 VT 76, ¶ 11). For rights to vest, the application must be complete and for a specific project, not simply for future development generally. In re Keystone Dev. Corp., 2009 VT 13, ¶ 6, 186 Vt. 523.

Appellants also assert, through their Question 16, that because OMS commenced construction prior to the enactment of the 2015 Regulations, the applicable regulations are those that were in effect at the time OMS commenced construction. Appellants offered no legal foundation from either the 2006 Regulations or the enabling statutes that supports this legal theory. We therefore do not intend to create such a legal doctrine out of whole cloth and reject it.

If a complete application is filed within 150 days after public notice is given for proposed amendments, the application is considered under the proposed amendments. 24 V.S.A. § 4449(d) (incorporated in the 2006 and 2015 Regulations at Section 226). If the application is denied and afterwards the proposed amendments are not adopted, the application may be reconsidered under the un-amended regulations. Id.

Here, OMS submitted an application for conditional use and preservation district design review on August 14, 2014. The application was approved on October 9, 2014, and construction began that same month. Transcript 4/13/2015 at 27. Appellants appealed the decision to us, and we remanded the case to the DRB on January 21, 2015. Public notice of the proposed

amendments was first given on January 20, 2015. Decision at 1. OMS submitted a revised application for conditional use approval, site plan review, and design review on March 12, 2015.

Neither Appellants, nor OMS, took a position at the hearing regarding which set of regulations should apply. Appellants, in their Revised Brief, assert that, "[a]rguably, under 24 V.S.A. § 4449(d), both the 2006 Regulations and the 2015 Regulations apply." Appellants' Revised Brief at 27 n.7. They do not elaborate on this argument. OMS, in its surrebuttal, contends that the DRB was correct in applying the 2015 regulations, because the April 13 hearing was within 150 days of public notice of the proposed amendments. Surrebuttal at 2. OMS adds that there is no prejudice in applying the 2015 Regulations, and that the issue is moot because the proposed training facility was approved under both sets of regulations.

Because the August 14, 2014 application did not include site plan review, the site plan must be reviewed under the 2015 Regulations. See In re Appeal of Jolley Associates, 2006 VT 132, ¶ 17, 181 Vt. 190 (holding that applicant had a vested right to consideration of its conditional use application under bylaws in effect when that application was filed; but, although the conditional use application included a site plan, because a separate site plan application was only filed later, when new bylaws were in effect, the site plan application must be considered under the new bylaws); In re Cushing Family, LLC Site Plan Application, No. 61-4-09 Vtec slip op. at 5–6 (Vt. Envtl. Ct. Dec. 17, 2009) (Wright, J.). This is a moot point because Appellants do not appeal anything specific to site plan approval.

The conditional use and design review applications are vested in the 2006 Regulations. This is because the August 14, 2014 application was complete and was filed before notice of amendments, and the March 12, 2015 application is for the conditional use and design review approval for the same project. See In re Jolley Associates, 2006 VT 132, ¶ 16, 181 Vt. 190 (when a conditional use permit application is properly filed, approved by a municipal panel, appealed to the Environmental Court and remanded back to the municipal panel, and the applicant then submits a revised permit application, that application is considered under the bylaws in effect at the time the original conditional use application was filed).

In their Reply Brief, and raised in Question 12, Appellants argue that the OMS representation in their zoning application letter that the 2006 Regulations would apply, and then

Atty. Callahan's statement at hearing that the 2015 Regulations would apply, caused a due process violation. Questions 11 and 13–15 ask whether the DRB's failure to state which set of regulations applied, OMS assertions regarding the applicable regulations, and the availability of the appropriate regulations resulted in due process violations.

We again see no due process violation here. This is not a case of bait and switch, where the Appellants were led to believe one set of regulations applied, and the DRB then intentionally applied the other. The confusion regarding which set of regulations applied was mutual among all parties. Neither party argued at the hearing that one or the other set of regulations should apply. Most importantly, in the end the DRB, in an effort to ensure compliance, considered the application under both sets of regulations. If anything, this put OMS at a disadvantage, as it entailed a more rigorous review process than would have been applied under only one set of regulations.

In addition, the DRB did not commit reversible error when it decided to review the application under both sets of regulations. See In re JLD Properties – Wal-Mart, St. Albans, Nos. 242-10-06, 92-5-07, 116-6-08 Vtec, slip op. at 19 (Vt. Envtl. Ct. Mar. 16, 2009) (Durkin, J.) (explaining that the St. Albans DRB did not commit a due process violation by failing to inform the parties whether a certain section of the municipal bylaws applied to the proposed project, noting that "[c]ourts make similar rulings all the time—for instance, when a court finds that it need not determine what standard of review applies because the outcome is the same under any standard"). We conclude that the DRB did not violate MAPA or Appellants' due process rights in the manner in which it reviewed and resolved the legal questions of whether the 2006 or 2015 Regulations should govern the pending OMS application. We therefore answer Appellants' Questions 11–14 in the negative. Further, we conclude that OMS is not estopped from referencing or relying upon the applicable provisions in the 2015 Regulations, that the hearing process established and followed by the DRB satisfied MAPA and all applicable due process requirements, and that the DRB sufficiently resolved which Regulations applied to which portions of the pending OMS application. We therefore answer Appellants' Questions 15, 16, 18, 19, and 23 in the negative.

**V.    Whether OMS satisfied its burden of proof under the applicable Regulations**

Questions 21, 22 and 26 ask, in part, whether reversal is warranted because certain parts of the regulations were not taken into account by the project's designers.  In their brief, Appellants argue that because the witnesses for OMS testified that the proposed training facility was planned and evaluated in relation to the 2006 Regulations, and because Atty. Slason understood that the applications would be evaluated under the 2006 Regulations, OMS failed to prove that the project complies with the 2015 Regulations.

Zoning applications are not measured by the applicant's subjective understanding of the applicable regulations, or subjective belief of whether the proposed project complies with those regulations.  Rather, applications are approved if the applicant presents sufficient evidence to convince the appropriate municipal panel (and this Court on appeal) that the project will objectively comply with the appropriate regulations.  Applications are denied if the applicant fails to produce sufficient evidence to demonstrate compliance.  This is the principle set out in the case cited by Appellants in their brief.  In re Rivers Dev. Conditional Use Appeal, No. 7-1-05 Vtec, slip op. at 8–10 (Vt. Envtl. Ct. Jan. 11, 2008) (Durkin, J.).

Appellants do not point out any specific information that OMS failed to produce to support its application.  Nor do Appellants argue that any of the DRB's factual findings or conclusions of law are erroneous or insufficient in concluding that the application complies with the 2015 Regulations.

This argument is also moot insofar as the conditional use and design review elements of the application should be considered under the 2006 Regulations, and not the 2015 Regulations.

For all these reasons, we conclude that the DRB had sufficient factual foundation for its conclusions that OMS satisfied its burden of proof under the applicable Regulations concerning the Special Public Use Exceptions.  We therefore answer Appellants' Questions 21, 22 and 26 in the negative.

**VI.    Whether the application and project comply with the applicable Regulations**

In Question 20, Appellants ask whether the DRB should be reversed because the application and project do not comply with the 2006 Regulations because the project is not a

permitted or conditional use in the L-P District, and it does not comply with the L-P District standard that lot coverage not exceed 2,500 square feet.

### a. Whether the project is a permitted or conditional use in the L-P District

The 2006 Regulations do not list schools (or any other type of special public use) as permitted or conditional uses in any zoning district. The 2015 Regulations, Section 410, list schools as conditional uses in the L-P District. Both sets of regulations list schools as a special public use. 2006 Regulations Section 510.3; 2015 Regulations Sections 221.5 and 510.3. Both sets of regulations, at Section 510.3, specify that special public uses are subject to conditional use review.

Appellants argue that schools are not allowed in the L-P District because they are not listed as a permitted or conditional use.

OMS contends that schools, as special public uses, are allowed in all districts, including the L-P District, subject to conditional use review.

The DRB concluded that the Okemo Mountain School is a fully licensed school certified by the Vermont Department of Education, Decision at 3, Finding 2. The DRB also concluded that the school is permitted as a special public use exception, and was originally granted a conditional use permit as a special public use. Decision at 9, Finding 28. The DRB added that "[s]ubsequent permit amendments have confirmed the public use exception and have also referenced the school services as '*professional service*' as a conditional use" permitted in the L-P and R-C Districts. Id. The DRB found that the proposed training facility is "an integral and essential component" of the school's program, Decision at 5, Finding 9.[7]

Appellants challenge the legal conclusion that schools, as special public use exceptions, are allowed as conditional uses in the L-P District under the 2006 Regulations. As noted above,

---

[7] The DRB also made a "finding" that appears to interpret Section 410, paragraph 2, of the 2006 Regulations to automatically subject "new and expanded or altered structures within" the L-P District to conditional use approval. Decision at 5, Finding 8. This finding is more in the nature of a legal conclusion, and not one that we agree with. Rather, we understand this provision to apply additional requirements to new or expanded structures that are otherwise listed as conditional uses. To the extent that the DRB relied on this provision in determining that the new training facility would be a conditional use, we disagree. However, we agree that the training facility, as part of the school, is a conditional use in the L-P District, for reasons set out below.

in an on-the-record appeal, we review the DRB's legal conclusions without deference unless such conclusions are within the DRB's area of expertise. Stowe Highlands, 2009 VT 76, ¶ 7.

The legal conclusion here deals with an interpretation of a zoning regulation. As with statutory interpretation, we read zoning regulations to give effect to the drafters' intent. In re Bjerke Zoning Permit Denial, 2014 VT 13, ¶ 22 (quoting Lubinsky v. Fair Haven Zoning Bd., 148 Vt. 47, 49 (1986)). We "construe words according to their plain and ordinary meaning, giving effect to the whole and every part" of the regulations. In re Appeal of Trahan, 2008 VT 90, ¶ 19, 184 Vt. 262. We also interpret zoning regulations to "further fair and rational consequences, and to avoid surplusage and absurd results." In re Dodge Farm Community, LLC, No. 155-7-07 Vtec slip op. at 5 (Vt. Envtl. Ct. Mar. 24, 2008) (Wright, J.) (citations omitted). Because zoning regulations limit common law property rights, we resolve any uncertainty in favor of the property owner. Bjerke, 2014 VT 13, ¶ 22. We defer to "a municipality's interpretation of its own ordinance if it is reasonable and has been applied consistently." In re Application of Lathrop Ltd. P'ship I, 2015 VT 49, ¶ 21, 199 Vt. 19 (citing In re Champlain Coll. Maple St. Dormitory, 2009 VT 55, ¶ 10, 186 Vt. 313).

The 2006 Regulations designate schools, and certain other uses, as special public uses, and indicate that these uses are subject to conditional use review. The Regulations then exclude all of the listed special public uses from lists of approved conditional uses in each of the three zoning districts.

On the plain language alone, the meaning of this language is not entirely clear. However, we believe that it would lead to "absurd results" to conclude that the drafters of the 2006 Regulations intended to create an entire category of "special public use exceptions," to specifically indicate that the uses in this category are subject to conditional use review, and then to intentionally exclude such uses from all zoning districts.

In addition, it appears that the DRB has interpreted the regulations in the past to allow uses designated as special public uses in districts where those specific uses are not specifically listed as conditional uses, as it did when it granted OMS its original permit.

In order to avoid absurd results, following the rule that uncertainty is resolved in favor of the property owner, and deferring to the reasonable interpretation of the municipality, which it

has applied consistently, we conclude that schools, as special public uses, are allowed as conditional uses in the L-P and other Zoning Districts under the 2006 Regulations.

**b. Whether the proposed training facility complies with lot coverage requirements**

Conditional uses in the L-P District require a 10,000 square foot minimum lot area. The lot for the proposed training facility covers 69,177 square feet in the L-P District, which complies with the minimum lot area of 10,000 square feet. Decision at 4, Finding 6; at 9, Findings 25, 29. This is supported by the site plan on record, Appellee's Printed Case, Tab D, and by the project engineer's testimony, Transcript 4/13/2015 at 63.

Appellants argue that the proposed training facility does not comply with the district standard that lot coverage not exceed 2,500 square feet. However, that limitation applies to residential uses only; there is no lot coverage maximum for non-residential uses. 2006 Regulations, Section 410. Under a plain-language reading of the regulations, the school is clearly non-residential and therefore no lot coverage maximum applies.

For these reasons, we answer Appellants' Question 20 in the negative.

**c. Whether the project is an expansion of a nonconforming use and nonconforming structure**

In Question 25, Appellants ask whether reversal is warranted because the Project is an expansion of a nonconforming use and nonconforming structure and the DRB decision failed to show how the proposed training facility complies with the nonconforming use and nonconforming structure provisions of the 2006 Regulations. This argument is not clearly briefed, but is mentioned in a footnote. Appellants' Revised Brief at 28 n.8.

Because the 2006 Regulations allow schools to be approved as conditional uses in the L-P District, the existing school building is not a nonconforming use or nonconforming structure. OMS, and the DRB, were therefore not required to show how the proposed training facility complies with the nonconforming use and nonconforming structure provisions of the 2006 Regulations.

For these reasons, we answer Appellants' Question 25 in the negative.

### VII. Whether the proposed training facility complies with the Special Public Use standards set out in Section 510.3 of both the 2006 and 2015 Regulations

Appellants here repeat the argument that the proposed training facility is not a permitted or conditional use in the L-P District, and fails to comply with the 2,500 square foot maximum lot coverage requirement. As discussed above, this argument is unavailing.

Questions 21 and 22 ask whether we should reverse because the project was not evaluated under, or does not comply with, Section 510.3 of both sets of regulations. Question 26 asks whether we should reverse because Jules Chatot, the training facility's architect, did not consider those sections when he designed the training facility, and in particular he failed to consider a condition under Section 510.3, in both sets of regulations, which states: "To protect the privacy of adjoining property owners, additional yard space or setbacks of the use from the property line other than what is already required in the district may be required."

As noted above, zoning decisions turn on whether the project objectively complies with the relevant zoning provisions. Section 510.3 requires the DRB, not the applicant or the project designer, to consider whether the project complies with the standards set out in that section.

Here, the DRB made specific findings supporting the conclusion that the proposed training facility complies with Section 510.3 of both sets of regulations. Decision at 13–14, Findings 22–26; at 16–17, Findings 2–8. The privacy of adjoining property owners—and Appellants in particular—was considered in Finding 4, which notes that a wooden fence and crabapple trees will be planted along the westerly boundary. Id. at 16. This finding is supported by testimony of project engineer Ralph Michael, who stated that the crabapple trees and fence were included in the plan to maximize privacy for the Rolka residence, which is located to the west of the proposed training facility. Transcript 4/13/16 at 56–58. Mr. Michael went into some detail as to how the trees and fence would achieve that purpose. Id.

The DRB made conclusions of law related to the standards set out in 510.3 as well. Decision at 21, conclusion No. 3. The conclusion notes that "[a]dditional fencing and plantings will provide adequate screening on the westerly boundary." Id.

The factual findings here are supported by the testimony. Appellants have not pointed to anything in the record suggesting that different setbacks may have been appropriate, or that the planned privacy protections are inadequate. We therefore conclude that the DRB adequately

established the factual and legal foundation for its conclusion that the fencing and plantings will provide sufficient privacy protection to satisfy the requirements of Section 510.3.

### VIII. Whether the 2015 Regulation is invalid

Lastly, we turn to Appellants' final Question, Question 28, which posits "[w]hether the [DRB] Decision must be reversed because the 2015 Regulation is invalid?" We question whether this Question is appropriate for our review, since it appears to challenge the separate legislative enactment of those Regulations. However, we are left to wonder about the legal foundation for Appellants' last Question, since their brief contains no analysis of this Question. We therefore decline to consider this last Question, due to the lack of explanation, and answer Appellants' Question 28 in the negative.

### Conclusion

For all the reasons detailed above, we hereby **AFFIRM** the Town of Ludlow Development Review Board Decision of June 11, 2015, granting conditional use, site plan review, and design review approval to the application of the Okemo Tutorial Program, Inc. d/b/a Okemo Mountain School ("OMS") for the construction of a new training facility building, adjacent to OMS's existing school facility at 53 Main Street in Ludlow, Vermont.

A Judgment Order accompanies this Merits Decision. This completes the current proceedings before this Court in this on-the-record appeal.

Electronically signed on November 23, 2016 at Newfane, Vermont, pursuant to V.R.E.F. 7(d).

_____
Thomas S. Durkin, Judge
Environmental Division