2011 VT 76

# In re Times and Seasons, LLC Act 250 Reconsideration

[27 A.3d 323]

No. 10-154

Present: **Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.**

Opinion Filed July 8, 2011

*David L. Grayck* of *Cheney, Brock & Saudek, P.C.*, Montpelier, for Appellant.

*William H. Sorrell,* Attorney General, and *Thea J. Schwartz,* Assistant Attorney General, Montpelier, for Appellee State of Vermont.

*Geoffrey H. Hand, Rebecca E. Boucher,* and *Elizabeth H. Catlin* of *Shems Dunkiel Raubvogel & Saunders PLLC,* Burlington, for Appellee Town of Royalton Planning Commission.

¶ 1. **Johnson, J.** Applicant Times and Seasons, LLC, appeals from the Environmental Court's grant of summary judgment to the Natural Resources Board and corresponding denial of applicant's Act 250 permit application to construct and operate a gift shop and deli with related improvements on Dairy Hill Road in the Town of Royalton. Applicant argues that it may avail itself of the definition of "primary agricultural soils" in 10 V.S.A. § 6001(15) amended during the course of its litigation to secure compliance with criterion 9(B), 10 V.S.A. § 6086(a)(9)(B), the only Act 250 criterion for which it has not received approval. We disagree and therefore affirm.

¶ 2. In 2004, applicant first sought approval under Act 250 to construct an approximately 4,800-square-foot gift shop and deli project on Dairy Hill Road in Royalton, near the Joseph Smith Birthplace Memorial. Both the District 3 Environmental Commission (District Commission) and the former Environmental Board

denied the application. The Board found that the application failed to satisfy Act 250 criteria 8, 9(B), and 10.

¶ 3. Criterion 9(B), 10 V.S.A. § 6086(a)(9)(B), at that time required that the project would "not significantly reduce the agricultural potential of the primary agricultural soils," or, if a significant reduction existed, that four subcriteria set forth in 10 V.S.A. § 6086(a)(9)(B)(i)-(iv) were satisfied.[1] 10 V.S.A. § 6086(a)(9)(B) (1997). The Board found that there were 2.8 acres of primary agricultural soils on the 7.3-acre project site and that the project would significantly reduce the agricultural potential of 1.9 acres of these primary agricultural soils. Finding this loss of two-thirds of the primary agricultural soils on the site to be a significant reduction under the statute, the Board next concluded that applicant failed to carry its burden of proof as to all four subcriteria.

¶ 4. Applicant appealed the decision here. We affirmed in part and reversed in part the Board's permit denial in *In re Times & Seasons, LLC*, 2008 VT 7, 183 Vt. 336, 950 A.2d 1189. Although we reversed the Board's determination regarding criterion 10, we held that the Board did not err in concluding that the project application failed to comply with criterion 8 or criterion 9(B) and thus properly denied the permit under Act 250.[2] *Id.* ¶¶ 10, 16, 20, 23. With regard to criterion 9(B), we determined that the Board correctly concluded that the project as proposed would have an impact on approximately 1.9 of the 2.8 acres of primary agricultural soils at the site and that applicant failed to meet the four subcriteria of 9(B). *Id.* ¶¶ 16, 20. We denied applicant's motion for reargument on March 14, 2008.

¶ 5. During the course of that litigation, a statutory amendment to 10 V.S.A. § 6001(15) changed the definition of "primary agricultural soils" at issue in criterion 9(B). 2005, No. 183 (Adj. Sess.), § 6. On August 29, 2008, applicant filed a reconsideration request with the District Commission pursuant to 10 V.S.A. § 6087(c), which allows an applicant to apply for reconsideration within six months of a final Act 250 permit application denial if the applicant

---

[1] This statute has since been amended. See 2005, No. 183 (Adj. Sess.), § 7.

[2] While that appeal was pending, applicant constructed a building on the project site of approximately the same size and in approximately the same footprint, with a substantially similar floor plan. Because applicant represented that the sole purpose of this building is to produce maple syrup, which was deemed to qualify as farming, it was exempt from Act 250 jurisdiction.

certifies that the deficiencies causing the denial have been corrected. On reconsideration, applicant claimed compliance with criteria 8 and 9(B). The District Commission found that the project complied with criterion 8.

¶ 6. In its reconsideration application, applicant contended that the amended definition of primary agricultural soils governed the District Commission's reconsideration of criterion 9(B). It argued that its project — although unchanged — now complied with criterion 9(B) because the soils on its site did not fall under the new definition of primary agricultural soils. The District Commission applied the amended definition and found that applicant's project still failed to satisfy criterion 9(B). Specifically, it found that, even if it applied the amended definition, there were 2.8 acres of primary agricultural soils at the project site and the project would significantly reduce the agricultural potential of 1.9 acres of primary agricultural soils. Applicant presented no evidence on the four subcriteria of 9(B) and thus failed to satisfy them. The District Commission therefore denied the application.

¶ 7. Applicant appealed that denial to the Environmental Court. It did not claim that it had revised its initial application to comply with criterion 9(B). Rather, as before the District Commission, applicant contended that its Act 250 permit application was entitled to approval because the proposed project satisfied criterion 9(B) as result of the statutory amendment to 10 V.S.A. § 6001(15) changing the definition of primary agricultural soils. On summary judgment, the court denied applicant's application. It found that applicant failed to remedy the deficiencies in its original application concerning criterion 9(B). It also found that on reconsideration of the original application pursuant to 10 V.S.A. § 6087, applicant could not avail itself of the new definition, amended during the course of litigation, to secure compliance with criterion 9(B). This appeal followed.

¶ 8. Applicant again argues that it is entitled to take advantage of the amended definition of primary agricultural soils in 10 V.S.A. § 6001(15) to comply with criterion 9(B) on its application for reconsideration pursuant to 10 V.S.A. § 6087(c); it thus claims that the Environmental Court's denial of applicant's application on summary judgment should be reversed and remanded. We review summary judgment rulings de novo, applying the same standard as the Environmental Court. *In re Eustance Act 250 Jurisdictional Op.*, 2009 VT 16, ¶ 14, 185 Vt. 447, 970 A.2d 1285. Summary

judgment is appropriate when there is no genuine issue as to any material fact and any party is entitled to judgment as a matter of law. V.R.C.P. 56(c)(3).

¶ 9. We reach the same result as the Environmental Court because our vested rights doctrine prevents applicant on reconsideration from availing itself of the definition amended during the course of litigation and relying solely on the change in law to correct the deficiencies causing its Act 250 permit denial. Applicant contends that it has a vested right to have the amended definition apply to its reconsideration application. It emphasizes that the submission of an application for reconsideration is a "vesting event" that entitles applicant to all law in effect at that time. Applicant therefore suggests that the deficiencies leading to its initial denial may be corrected on reconsideration simply by the favorable change in law, rather than by changes to the project itself. Applicant, however, misinterprets our vested rights doctrine as it applies to an Act 250 reconsideration application.

¶ 10. When an Act 250 permit application is denied, 10 V.S.A. § 6087(c) allows an applicant to apply for reconsideration within six months of the denial. The statute requires that the Act 250 permit denial must "contain the specific reasons for denial," and, correspondingly, an applicant's reconsideration application must "include an affidavit . . . that the deficiencies have been corrected." 10 V.S.A. § 6087(c). The reconsideration application pursuant to § 6087(c) offers an applicant the opportunity to revisit only those aspects of the application that led to denial of the permit. That is, the reconsideration process allows an applicant to maintain the benefit of initial affirmative findings made on the original application and to receive additional review only in those areas found deficient. A reconsideration application is thus a continuation of the original Act 250 permit application.

¶ 11. Accordingly, the submission of a reconsideration application is not a separate vesting event. Contrary to applicant's proposed interpretation, an applicant on reconsideration may not simultaneously take advantage of the laws in effect at the time of the initial application and those in effect at the time of the reconsideration application — it is not a two-way street. To decide otherwise would be contrary to our vested rights doctrine, which allows the applicant on reconsideration to maintain the advantage of favorable findings when laws or regulations have changed

unfavorably. See *In re Paynter 2-Lot Subdivision*, 2010 VT 28, ¶ 9, 187 Vt. 637, 996 A.2d 219 (mem.) (explaining that town may not apply to submitted permit application zoning ordinance adopted after filing of application); cf. *Smith v. Winhall Planning Comm'n*, 140 Vt. 178, 181-82, 436 A.2d 760, 761-62 (1981) (holding that zoning regulations in effect when application was filed govern application, not subsequently enacted amendments).

■ ¶ 12. We have adopted the minority rule that a permit applicant gains a vested right in the governing laws and regulations in existence when a complete permit application is filed. *Paynter 2-Lot Subdivision*, 2010 VT 28, ¶ 9 (citing *Smith*, 140 Vt. at 181-82, 436 A.2d at 761). Applicant therefore has a vested right to the laws in effect at the time of its original Act 250 permit application for the deli and gift shop project. See *In re Molgano*, 163 Vt. 25, 33, 653 A.2d 772, 776-77 (1994) (holding that developer has vested right to zoning laws in effect at time of proper zoning permit application); *In re Taft Corners Assocs.*, 160 Vt. 583, 593-94, 632 A.2d 649, 655 (1993) (holding vested right in town plan in effect at time of original Act 250 umbrella permit); cf. *In re Ross*, 151 Vt. 54, 57-58, 557 A.2d 490, 492 (1989) (holding that where amendment to town plan was pending, Act 250 application must be complete for rights under old plan to vest and new application must comply with new town plan). These laws include the conditions and criteria set forth in 10 V.S.A. § 6086 and related definitions set forth in 10 V.S.A. § 6001 in effect at the time of applicant's initial submission of its Act 250 permit application.

¶ 13. Our adoption of the minority rule — vesting rights under existing regulations and laws as of the time when the proper application is filed — was not without careful thought and analysis. See *Smith*, 140 Vt. at 181-82, 436 A.2d at 761. The considerations that drove our choice included practicality of administration, avoidance of extended litigation and maneuvering, and certainty in the law and its administration. *Id.* Allowing an applicant to take advantage of favorable changes in the law on reconsideration would run counter to these principles. And now, as then, we conclude that holding an applicant to the laws in effect at the time of initial application is the more equitable approach in the long run. See *id.* at 182, 436 A.2d at 761.

■ ¶ 14. We are also mindful of the policy of 1 V.S.A. § 213, which provides that acts of the General Assembly, except those

regulating practice in court, relating to the competency of witnesses or to amendments of process or pleadings, shall not affect a suit begun or pending at the time of their passage. Just as this provision protects applicants from newly adopted ordinances, regulations, or laws unfavorable to an already-submitted permit application, see, e.g., *In re Preseault*, 132 Vt. 471, 474, 321 A.2d 65, 66 (1974), so too it prevents an applicant from selectively taking advantage of favorable changes in the law on reconsideration, which is merely the continuation of the original permit application.

■ ¶ 15. Nor do applicant's additional arguments persuade us that it is entitled to have the amended definition applied to its reconsideration application. Applicant cites cases from the Environmental Board and the Environmental Court applying laws, rules, or town plans changed after an applicant commenced the permitting process where the change in law made the application of Act 250 less restrictive on the applicant. We are not bound by, and, indeed, do not defer to, Environmental Board and Environmental Court precedent that conflicts with our established vested rights doctrine and the principles that underlie it. Cf. *In re Village Assocs. Act 250 Land Use Permit*, 2010 VT 42A, ¶ 7, 188 Vt. 113, 998 A.2d 712 (explaining that we review issues of law or statutory interpretation de novo). Similarly, applicant's arguments challenging the Environmental Court's reliance on *Eustance Act 250 Jurisdictional Opinion*, 2009 VT 16, and *In re Eastview at Middlebury, Inc.*, 2009 VT 98, 187 Vt. 208, 992 A.2d 1014, carry no weight, as we rely on our own analysis to reach this decision. Cf. *Eustance Act 250 Jurisdictional Op.*, 2009 VT 16, ¶ 14 (explaining that we review summary judgment rulings de novo).

■ ■ ¶ 16. Therefore, an application for reconsideration, and the required correction of deficiencies in the original on reconsideration, cannot rely on a favorable change in law. See 10 V.S.A. § 6087(c). On reconsideration, applicants must demonstrate through changes to the project itself that the deficiencies identified in the permit application's denial have been corrected. To take advantage of the change in law, applicant must begin the Act 250 permit process anew.

*Affirmed.*