STATE OF VERMONT

SUPERIOR COURT                                    ENVIRONMENTAL DIVISION

| Diverging Diamond Interchange SW Permit | Docket No. 50-6-16 Vtec |
|---|---|
| Diverging Diamond Interchange A250 | Docket No. 169-12-16 Vtec |

### Decision on Motions for Summary Judgment

These coordinated matters are an appeal of an Act 250 permit and an appeal of a stormwater permit, both for the Diverging Diamond Interchange proposed at Interstate 89, Exit 16 in Colchester (the Project).[1] In an October 11, 2017 decision we granted VTrans' and ANR's motions for summary judgment on certain questions. Now before the Court is RL Vallee, Inc.'s motion to reconsider part of that decision, specifically regarding Amended Questions 3, 7, and 8 in Docket number 50-6-16 Vtec.[2]

RL Vallee, Inc. (Vallee) is represented by Jon T. Anderson, Esq. and Alexander J. LaRosa, Esq. The Vermont Agency of Transportation (VTrans), represented by Justin E. Kolber, Esq. and John K. Dunleavy, Esq., and the Agency of Natural Resources (ANR), represented by Hannah W. Smith, Esq. and Kane Smart, Esq., each filed a memorandum opposing the motion to reconsider. No other party responded to the filings.

### Standard of Review

We treat motions to reconsider interlocutory orders by the metric established by civil rule 59(e). Old Lantern Non-conforming Use, No. 154-12-15 Vtec, slip op. at 2 (Vt. Super. Ct. Envtl.

---

[1] In Docket No. 50-6-16 Vtec, RL Vallee, Inc. appeals Individual Stormwater Discharge Permit No. 6946-INDS, issued on May 11, 2016 by the Vermont Agency of Natural Resources to the Vermont Agency of Transportation for the Diverging Diamond Interchange proposed at Interstate 89, Exit 16. In Docket No. 169-12-16 Vtec, RL Vallee, Inc. and Timberlake Associates, LLC appeal Act 250 permit #4C1271 and permit amendments #4C0676R-16, #4C0288-21, #4C0757-24, and #4C0471-7, issued jointly on November 28, 2016 by the District #4 Environmental Commission to the Vermont Agency of Transportation for the construction of the Diverging Diamond Interchange and related improvements.

[2] Although Vallee filed the motion to reconsider in both dockets 50-6-16 Vtec and 169-12-16 Vtec, the motion does not address our summary judgment decision regarding 169-12-16 Vtec.

424

Div. Sep. 13, 2017) (Durkin, J.). Accordingly, we may grant such a motion for any of the following reasons: "1) to correct manifest errors of law or fact upon which the judgment is based; (2) to allow a moving party to present newly discovered or previously unavailable evidence; (3) to prevent manifest injustice; and (4) to respond to an intervening change in the controlling law." Id. (quotations omitted).

## Discussion

Vallee asks the Court to reconsider its decision regarding Amended Questions 3, 7, and 8. Amended Question 3 asks whether VTrans' chloride management plan adequately ensures that chloride discharges to Sunnyside Brook will not reduce the quality of Sunnyside Brook below the classification established and/or that the discharges will not further the non-compliance of Sunnyside Brook with the Vermont Water Quality Standards (VWQS). Amended Question 7 asks whether construction should be conditioned to require measures to control chloride discharges into Sunnyside Brook to ensure that the brook meets and/or maintains compliance with the VWQS. Amended Question 8 asks whether the Project adequately addresses chloride contamination from stormwater.

I. **Whether the "Pending Ordinance Doctrine" requires ANR, and this Court, to apply regulations that are not yet in effect, but are about to go into effect, to a stormwater permit application.**

We held in our summary judgment decision that VTrans' stormwater application "vested in the laws and regulations in existence, when it was submitted by VTrans on October 3, 2014." Diverging Diamond Interchange SW Permit and A250, Nos. 50-6-16 Vtec and 169-12-16 Vtec, slip op. at 14 (Vt. Super. Ct. Envtl. Div. Oct. 11, 2017) (Walsh, J.). Because an updated version of the Vermont Water Quality Standards (the 2014 VWQS) did not go into effect until October 30, 2014, the application therefore vested in the earlier version of the standards (the 2011 VWQS). Id. at 7, 14.

Vallee now argues the Court and the parties made a manifest error of law in failing to address the "pending ordinance doctrine" in determining which version of the VWQS applies to the application.

Vallee did not raise this argument in its motion for summary judgment, in its response to VTrans' and ANR's motions for summary judgment, or in its reply to ANR's and VTrans' response

2

to its own summary judgment motion. Furthermore, Vallee offers no explanation for the failure to raise this argument until after the Court issued its decision on the summary judgment motions. Raising the new argument at this late stage of the proceedings prejudices the other parties by effectively forcing them to respond. For these reasons, we may deny a motion to reconsider a summary judgment decision that presents novel theories without addressing the merits of those theories. Campbell v. Stafford, 2011 VT 11, ¶ 17, 189 Vt. 567; Bostock v. City of Burlington, 2011 VT 89, ¶ 15, 190 Vt. 582.

As we discussed in our decision, a permit applicant's rights generally vest in the laws that exist at the time the permit application is submitted. Smith v. Winhall Planning Comm'n, 140 Vt. 178, 180–81 (1981). In its motion to reconsider, Vallee cites cases that address statutory exceptions to this rule, specifically regarding municipal zoning regulations and town plans.[3]

Until 2000, a statutory exception to our vested rights doctrine put a "moratorium" on issuing zoning permits under a bylaw that was subject to a proposed amendment. In re Handy, 171 Vt. 336, 342–43 (2000). In 2000, the Supreme Court found this statute unconstitutional because it removed the standards and guidelines required for zoning regulations to be constitutional in the first place. Id. at 344–47. The legislature subsequently created a new exception to the vested rights doctrine, again calling for different treatment of municipal zoning permit applications when proposed changes to relevant parts of the zoning regulations are pending. 24 V.S.A. § 4449(d); Re: John A. Russell Corp., No. 1R0489-6-EB, Findings of Fact, Conclusions of Law, and Order at 28–29 (Vt. Env. Bd. Jan. 17, 2002). The new statute, which includes specific standards as to how this is to be done, remains in effect today. See Shatney Home Occupation Denial, No. 43-4-16 Vtec, slip op. at 4–6 (Vt. Super. Ct. Envtl. Div. Oct. 27, 2016) (Walsh, J.). The Supreme Court later stated that while it discussed the "pending ordinance doctrine" in Handy, it did not adopt the doctrine in that case. In re John A. Russell Corp., 2003 VT 93, ¶ 15, 176 Vt. 520 (mem.).

---

[3] Vallee also cites a Public Service Board case, Petition of Ampersand Gilman Hydro, Lp, No. 8840, 2017 WL 1507653 (Apr. 21, 2017), in which Vallee claims the Board applied the pending ordinance doctrine. While the decision notes that the parties made arguments related to the pending ordinance doctrine, Id. at *1, the Board ultimately decided the matter through an analysis of Public Service Board rules, Id. at 4–5. The decision does not discuss Vermont's vested rights doctrine in relation to permit applications, nor does it discuss the pending ordinance doctrine.

A separate statutory provision, 24 V.S.A. § 4387(d), has been interpreted by the Supreme Court to give a new town plan retroactive effect to the time that the previous town plan expired. Id. ¶ 15. While this retroactivity rule applies to town plans, which, like zoning regulations, are creatures of Vermont's Planning and Development Act, 24 V.S.A. § 4301 et seq., it becomes relevant to Act 250 proceedings insofar as Criterion 10 requires conformity with "any duly adopted local or regional plan." 10 V.S.A. § 6086(a)(10). No statute or court ruling would apply a similar retroactivity rule, or "pending ordinance doctrine," to Act 250 permit applications generally, or to ANR permits.

While the legislature has created narrow statutory exceptions to our vested rights doctrine regarding municipal zoning permits and town plans, there is no analogous exception that would apply to stormwater permit applications. Vallee has given no reason why the Court should create such an exception on its own, and we decline to do so at this time.

## II. Whether the stormwater permit must take chloride into account because ANR made chloride relevant to the stormwater permit.

As noted above, we held in our summary judgment decision that VTrans' application vested in the 2011 VWQS. Because those standards have no criteria for chloride, they do not require the stormwater system to comply with any criteria for chloride. Diverging Diamond, Nos. 50-6-16 Vtec and 169-12-16 Vtec at 4 (Oct. 11, 2017).

Vallee argues that the stormwater permit must take chloride into account because ANR made chloride "relevant" by asking VTrans to submit a chloride management plan in an October 16, 2014 letter.[4] The letter that Vallee refers to, however, does not ask for a chloride management plan.

Even if ANR had asked VTrans to take chloride into account, such a request would not spontaneously require the stormwater permit application meet a chloride standard. Even if ANR, at some point in its review process, believed that the stormwater permit must take chloride into account, our de novo review of this matter is not bound by that belief, especially if it is untethered from any legal authority. See Stowe Highlands PRD, No. 184-8-06 Vtec, slip op. at 2 (Vt. Envtl.

---

[4] This argument appears to allege a mistake of fact or law in the Court's summary judgment decision.

4

Ct., Nov. 2, 2006) (Durkin, J.) ("In a de novo appeal, this Court stands in the place of the decision maker below, and looks anew at the application as if no decision had been rendered below.").

In short, Vallee fails to explain how ANR made chloride management a relevant consideration for the permit, or how that would require the stormwater permit to take chloride into account.

### III. Whether VTrans' January 2015 application was a new application that extinguished rights vested by the submission of earlier applications.

In our summary judgment decision, we concluded that VTrans submitted a complete stormwater permit application on October 3, 2014 and that the application vested in the regulations in effect on that date. Diverging Diamond, Nos. 50-6-16 Vtec and 169-12-16 Vtec at 14 (Oct. 11, 2017). We further determined that revisions made after that date, including on January 13, 2015, did not extinguish the rights vested on October 3, 2014. Id. at 12–14.

Vallee argues that the January 13, 2015 revisions were effectively a new application which superseded the October 3, 2014 application and extinguished rights vested by the earlier application.

Vallee cites a letter from an ANR stormwater technician to VTrans confirming receipt of the October 3, 2014 application.[5] The letter states, in part, "[t]his is not a notice of determination of whether or not the application is complete." Although Vallee reads this to mean the application was incomplete, we understand this to be a neutral statement which makes no conclusion about the application's completeness. Vallee also cites an October 3, 2014 email from an ANR employee to ANR staff stating that "[t]he project is not yet administratively complete but I will be taking a look at the application materials at my earliest convenience" (original emphasis). Again, Vallee reads this as a determination by ANR that the October 3, 2014 application was administratively incomplete. We disagree; we understand this sentence to mean that the ANR employee had not yet looked at the application materials, and therefore had not determined whether the application was administratively complete. As explained in our summary judgment decision, the fact that ANR went on to consider the technical merits of the application without

---

[5] The letter is dated February 15, 2013. However, Vallee has pointed out that this date is likely incorrect, as the letter references an application received October 3, 2014.

5

receiving any further information from VTrans demonstrates that the application must have been administratively complete on October 3, 2014. Diverging Diamond, Nos. 50-6-16 Vtec and 169-12-16 Vtec at 10 (Oct. 11, 2017).

Vallee next argues that the January 13, 2015 application was an entirely new application that superseded and nullified the October 3, 2014 application because the January application contained every required element of a stormwater application. To support this argument, Vallee refers to the legal principle set out in our summary judgment decision as follows: "[i]f an applicant withdraws an application and submits a new application, vest[ed] rights in the original application are extinguished, and the applicant vests in the laws and regulations in effect at the time the new application is filed." Id. at 13 (citing In re Times & Seasons, LLC, 2011 VT 76, ¶ 16, 190 Vt. 163; John A. Russell Corp., 2003 VT 93, ¶ 13). Here, there is no indication that VTrans sought to withdraw its October 3, 2014 application, and therefore no reason why this principle would apply.

Finally, Vallee argues the January 13, 2015 application proposed a new stormwater system because it involved, for the first time, the use of a Site Balancing procedure. Vallee notes that an application proposing site balancing must include a site balancing workbook. Because site balancing was not proposed in the October 3, 2014 application, Vallee contends, the application could not have included the site balancing workbook, and it was therefore administratively incomplete.

This is again a new theory not raised in any of the summary judgment pleadings, and Vallee again fails to explain why it is only raising this issue on a motion to reconsider. Campbell, 2011 VT 11, ¶ 17. Unlike Vallee's pending ordinance argument, however, this argument relies on a new factual basis not presented to the Court in the summary judgment pleadings. We decline

6

to re-open the summary judgment proceedings to allow the parties to submit new materials to the record in support of new legal theories. Bostock, 2011 VT 89, ¶ 18.[6]

We also note that Vallee misinterprets the Court's summary judgment decision in claiming that "[t]he Court recognized that a February, 2013 application filed by VTrans was replaced (and vested rights extinguished) on October 3, 2014 when the ANR received a 'revised SW Permit application.'" Vallee Mot. Reconsider at 4.

We held that the application vested on October 3, 2014 when a complete application was submitted, but added in a footnote:

> It is possible that the application was administratively complete February 13, 2013. Because the parties have not submitted any information to the Court on the substance of the application submitted on that date, or regarding changes made from the February 13, 2013 application to the October 3, 2014 application, we infer, in favor of the non-moving party, that the February 2013 application was administratively incomplete, and subsequent changes made the October 2014 application administratively complete.

Diverging Diamond, Nos. 50-6-16 Vtec and 169-12-16 Vtec at 14 n.8 (Oct. 11, 2017). We add here that the completeness of the February 2013 application was not material to resolving the issues before the Court.

For these reasons, we again decline to conclude that the January 13, 2015 application extinguished rights vested by the October 3, 2014 application.

---

[6] We nevertheless note that in response to the motion to reconsider, VTrans presents an affidavit and supporting documentation demonstrating that site balancing was included in the October 3, 2014 application.

In addition, we have explained that the permitting process often involves making changes to a proposed project. Diverging Diamond, Nos. 50-6-16 Vtec and 169-12-16 Vtec at 13–14 (Oct. 11, 2017). Even if an initial stormwater application did not include site balancing, and then through the review process the application was revised to add site balancing, it would be unreasonable to then go back and say that the original application was incomplete because it did not have all the information required for site balancing. See Re: Hannaford Bros. Co. and Lowes Home Centers, Inc., No. WQ-01-01, Mem. of Decision at 11 (Vt. Wat. Res. Bd. June. 29, 2001). ("Good faith requires that a complete application **reasonably** address all the factors that the agency is legally required to address in its permit review.") (emphasis added).

**IV.** **Whether VTrans' failure to provide a list of owners of jurisdictional impervious surfaces rendered the stormwater application incomplete for vesting purposes.**

We noted in our summary judgment decision that Stormwater Management Rule § 18-309(b)(2) does not require an applicant to list all owners of impervious surfaces associated with a project.[7] Diverging Diamond, Nos. 50-6-16 Vtec and 169-12-16 Vtec at 11 (Oct. 11, 2017).

In its motion to reconsider Vallee challenges our reading of § 18-309(b)(2) as a mistake of law, and presents the new argument that the "NOI recognizes this rule and requires that the owner of the jurisdictional impervious surfaces, or authorized representative, sign the NOI." Vallee Mot. Reconsider at 8. This presumably refers to part 19 of the NOI, which reads "OWNER / OPERATOR CERTIFICATION: I hereby certify that I have read General Permit 3-9015 and agree to abide by its terms," and part 20, which has two signature lines underscored by the words "Original Signature of Owner or Authorized Representative."

We see no reason to alter the analysis of § 18-309(b)(2) set out in our summary judgment decision. Just as this rule does not require each landowner whose land will be taken through eminent domain to be listed on the application, parts 19 and 20 of the NOI do not require those landowners' signatures. Instead, we understand these parts of the NOI to require the signature of the party that will own or control the property on which the stormwater system will be built.

This understanding is reinforced by the fact that VTrans has eminent domain authority to acquire land and rights for highway projects. 19 V.S.A. ch. 5. Requiring potentially hostile landowners who may be subject to condemnation to co-sign an application that would hurry the process along would potentially undermine this authority. This is the inverse of a principle we have noted in the context of municipal permitting, that "[t]he purpose of including a non-applicant landowner on an application is to 'ensure that the landowner, who has a substantial interest in his or her property, supports the proposed use of the property.'" Devonwood

---

[7] That rule states:

> The applicant shall own or control the impervious surfaces for which permit coverage is required. If the applicant merely controls the impervious surfaces, the owner of the impervious surfaces shall be a co-applicant, unless the applicant that controls the impervious surface is a municipality or stormwater utility that has assumed responsibility for the management of discharges of regulated stormwater runoff from the impervious surfaces.

16-3 Vt. Code. R. § 505:18-309(b)(2).

Investors, LLC 75 Cherry Street, No. 39-4-17 Vtec, slip op. at 6 (Vt. Super. Ct. Envtl. Div. Jun. 22, 2017) (Walsh, J.) (quoting In re Southern Vermont Beagle Club, No. 142-9-11 Vtec, slip op. at 10 (Vt. Super. Ct. Envtl. Div. Jan. 17, 2013) (Walsh, J.)).

Vallee next argues that Colchester owns part of the impervious surface included in the Project, and must therefore be a co-applicant under the plain language of Stormwater Management Rule § 18-309(b)(2). This is another new theory not raised in any of the summary judgment pleadings. Vallee again fails to explain why it is only raising this issue on a motion to reconsider. Campbell, 2011 VT 11, ¶ 17. This new theory, as with Vallee's site balancing argument, relies on a factual basis that is not entirely clear on the record created in the original summary judgment proceedings.[8] We therefore decline to address this new argument.

## V.   Whether the Court misinterpreted the term "complete."

The 2011 VWQS state that "[c]oncerning any application, the Water Quality Standards in effect at the time of filing apply." § 1-01(A)(2). The 2011 VWQS then define an "application," as "any request for a permit required by state or federal law when filed with, and deemed complete by, the reviewing authority." § 1-01(B)(4). Vallee argues that these provisions should be read to mean that an application is not "deemed complete" until it is ultimately approved.[9]

Vallee's reading would require us to conclude that "at the time of filing" means the moment ANR approves the application—which comes after the application has been submitted, reviewed by ANR, negotiated back and forth, adjusted, and finally approved. Based on the plain meaning of the terms in question, such a reading is untenable. Agency of Nat. Res. v. Deso, 2003 VT 36, ¶ 17, 175 Vt. 513 (rejecting statutory construction that leads to absurd results) (citation omitted).

Vallee's reading also goes against Vermont's rule on vested rights, Winhall, 140 Vt. at 181 (a permit application vests "as of the time when [a] proper application is filed"), and against past practice regarding stormwater permits, Hannaford Bros., No. WQ-01-01 at 13 (June. 29, 2001)

---

[8] The motion to reconsider offers a link to a map, not on the record in the summary judgment proceedings, purporting to show ownership of certain roads. In the motion and VTrans' response, there appears to be some dispute of the facts that underpin Vallee's new argument.

[9] Vallee cites 40 C.F.R. § 122.43(b)(1) in support of this argument. This regulation relates to federal National Pollutant Discharge Elimination Systems (NPDES) permitting. NPDES permitting is not at issue in this state stormwater case.

(agreeing with "ANR's practice of protecting the vested rights of permit applicants by retroactively deeming applications complete as of the date the applications were complete in fact").

## Order

Vallee's motion to reconsider is **DENIED**.

Electronically signed on November 22, 2017 at 10:16 AM pursuant to V.R.E.F. 7(d).

_____

Thomas G. Walsh, Judge
Superior Court, Environmental Division