VERMONT SUPERIOR COURT
32 Cherry St, 2nd Floor, Suite 303,
Burlington, VT 05401
802-951-1740
www.vermontjudiciary.org

ENVIRONMENTAL DIVISION
Docket No. 25-ENV-00051



| | |
|---|---|
| **9 Heaton St. Subdivision Z-2025-0036** | **DECISION ON MOTIONS** |

In this matter, Lisa Mahoney and Peter Mancauskas (together, Appellants) appeal a June 6, 2025 decision of the City of Montpelier (City) Development Review Board (DRB) granting Downstreet Housing & Community Development's (Applicant) application for a 3-lot subdivision at 9 Heaton Street, Montpelier, Vermont (the Property). Presently before the Court are Appellant and Applicant's cross-motions for summary judgment on all issues before the Court.

In this matter, Appellants are represented by Daniel A. Seff, Esq. Applicant is represented by Nicholas A.E. Low, Esq. and Ronald A. Shems, Esq. The City is represented by David W. Rugh, Esq.

### Legal Standard

To prevail on a motion for summary judgment, the moving party must demonstrate "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." V.R.C.P. 56(a), applicable here through V.R.E.C.P. 5(a)(2). When considering a motion for summary judgment, the nonmoving party receives the benefit of all reasonable doubts and inferences. Robertson v. Mylan Labs., Inc., 2004 VT 15, ¶ 15, 176 Vt. 356 (citation omitted). When considering cross-motions for summary judgment, the Court considers each motion individually and gives the opposing party the benefit of all reasonable doubts and inferences. City of Burlington v. Fairpoint Commc'ns, Inc., 2009 VT 59, ¶ 5, 186 Vt. 332 (citation omitted). In determining whether there is a dispute over any material fact, "we accept as true allegations made in opposition to the motion for summary judgment, so long as they are supported by affidavits or other evidentiary material." White v. Quechee Lakes Landowners' Ass'n, Inc., 170 Vt. 25, 28 (1999) (citation omitted); V.R.C.P. 56(c)(1)(A).

## Factual Background

We recite the following facts solely for the purpose of deciding the pending cross-motions. These facts do not constitute factual findings because factual findings cannot occur until after the Court conducts trial. Fritzeen v. Trudell Consulting Eng'rs, Inc., 170 Vt. 632, 633 (2000) (mem.).

1. On May 8, 2025, Applicant and Washington County Mental Health applied for approval for a 3-lot subdivision at the Property. Ex. 1.

2. The application seeks approval for subdivision only and does not seek approval to construct any residences or associated infrastructure at the Property. Id.

3. There is an existing facility on Lot 1. Applicant's general intent for Lots 2 and 3 are that they will be the site of future residential development. Id.

4. As a part of its application, Applicant submitted a site plan depicting residential development on the requested subdivided lots. Id.

5. At the time the application was submitted, the Montpelier Unified Development Regulations (Regulations), amended through April 3, 2024, were in effect (the 2024 Regulations). Ex. C.

6. On June 6, 2025, the DRB approved the application pursuant to the 2024 Regulations and did not apply site plan review standards to the application. Ex. 2.

7. Appellants timely appealed to this Court.

8. On July 9, 2025, the City adopted Interim amendments to the Regulations (the 2025 Regulations). Ex. 3.

## Discussion

Appellants and Applicant cross-move for summary judgment on all Questions in Appellants' Statement of Questions. See Statement of Questions (filed on July 24, 2025). Questions 1 through 11 functionally ask, with varying levels of specificity, whether the application was required to go through major or minor site plan review. Question 12 and 13 generally ask whether the application complies with Montpelier Unified Development Regulations (Regulations) § 3206.F. The Court addresses each issue in turn.

### I.  Questions 1 through 11

Questions 1 through 11 ask whether the application requires major or minor site plan review.[1]

---

[1] A number of Appellants' Questions in this section pose Questions that are either undisputed or essentially ask the Court to confirm what the Regulations or application states. For instance, Questions 7 and 10 ask whether the application went through minor or major site plan review. It is undisputed that the application did not go through either level of site plan review. Thus, in the basest sense, Appellants would be entitled to judgment as a matter of law on those Questions. That said, adjudication of the more substantive Questions 8 and 11, which ask whether minor or major subdivision review was required in this instance, will effectively resolve those Questions. Questions 7 and 10 are also likely

Both the 2024 and 2025 Regulations § 3201.A states that "[a]ll development shall meet the requirements of this Chapter except parcels used for one or two dwelling units." Regulations § 3201.A. "Development" is defined as including, in relevant part, "the subdivision of a parcel . . . into two or more parcels . . . ." Regulations § 1004.B.6.a. An unlabeled heading under Chapter 320, Site Plan Standards, states that "the purpose of this chapter is to establish additional standards for proposed development subject to site plan review (development other than one- and two-unit dwellings)." Regulations, Ch. 320.

When interpreting a zoning ordinance, the Court's goal is to effectuate the intent of the drafters, first by looking to the plain meaning of the regulation at issue and the "whole of the ordinance." Tyler Self-Storage, 2011 VT 66, ¶ 13 (quotation omitted). In construing statutory or ordinance language, our paramount goal is to implement the intent of its drafters. Morin v. Essex Optical/The Hartford, 2005 VT 15, ¶ 7, 178 Vt. 29. We will therefore "adopt a construction that implements the ordinance's legislative purpose and, in any event, will apply common sense." In re Laberge MotoCross Track, 2011 VT 1, ¶ 8, 189 Vt. 578 (quotation omitted); see also In re Bjerke Zoning Permit Denial, 2014 VT 13, ¶ 22 (quoting Lubinsky v. Fair Haven Zoning Bd., 148 Vt. 47, 49, 195 Vt. 586 (1986)) ("Our goal in interpreting [a zoning regulation], like a statute, 'is to give effect to the legislative intent.'"). Moreover, we will not interpret zoning regulations in ways that lead to irrational results. See Stowe Club Highlands, 164 Vt. 272, 280 (1995) (refusing to interpret regulation such that it leads to irrational results). Finally, because zoning regulations limit common law property rights, we resolve any uncertainty in favor of the property owner. Bjerke Zoning Permit Denial, 2014 VT 13, ¶ 22. With these provisions of interpretation in mind, we turn to the applicable regulatory and statutory provisions.

While Regulations § 3201.A states that all "development" except for one- and two-dwelling units must go through site plan review, and that subdivisions such as Applicant's constitute "development" as defined by Regulations § 1004.B.6.a, viewing the Regulations as a whole indicates that the application does not need to go through major or minor subdivision review. First, Regulations

---

contrary to this Court's de novo standard of review, as they ask this Court to confirm what the DRB did below, not whether such review should have occurred. Similarly, Questions 2 and 3 ask the Court to confirm what the Regulations state, independent of how those provisions relate to the application before the Court. Again, these issues are fully intrinsic to the more substantive Questions 8 and 11. Further, Questions 2 and 3 as posed request a general advisory opinion reiterating what the Regulations state. These Questions create awkward adjudication of the issues before the Court because some of the matters are undisputed or indisputable such that both opposing parties would be entitled to summary judgment on the Questions. A ruling on these Questions is not necessary to adjudicate the main issues before the Court. Thus, the Court largely views the multiple Questions as posing two general inquiries: whether the application requires major or minor site plan review.

§ 3201.B.1 lists the types of development that require major subdivision review. See Regulations § 3201.B.1(a)-(f). Each of those identify projects that include qualifying construction or renovation. Id.[2] None of those classifications include the subdivision of land alone. The application before the Court is for a 3-lot subdivision only and does not seek approval for any construction of improvements. Thus, the plain language of Regulations § 3201.B.1 does not require the application to go through major site plan review.

Further, a review of Chapter 320 in its entirety indicates that subdivisions that qualify as "development" by themselves would not require site plan review. For instance, it provides: (1) § 3202, addressing bicycle access and the siting of racks near "the entrance," pedestrian access, and connection to "building entrances;" (2) § 3203, addressing landscaping and that the purpose of that section is, in part, "[e]nhancing the appearance of the built environment as viewed from public vantage points;" (3) § 3204, which addresses outdoor lighting; (4) § 3205, addressing outdoor seating, display, or storage; (5) § 3206, addressing solar shading resulting from the construction of improvements; and (6) § 3207, addressing the visual design of building components. Read together, the regulatory provisions of site plan review concern the construction of qualifying improvements on land. The application does not presently entail any construction of improvements on the parcel.[3] Therefore, neither major nor minor site plan review applies here. To conclude otherwise—as Appellants propose—would lead to the absurd result of requiring applications to go through review intended to address impacts that are not proposed by their application.[4] The Court will not interpret the Regulations in such a manner. See Billewicz v. Town of Fair Haven, 2021 VT 20, ¶ 26 (explaining that statutes should not be interpreted to produce absurd or irrational results).

Appellants assert that the application before the Court goes beyond one for subdivision alone because site plans included with the application depict dwelling units and associated infrastructure. To be clear, Applicant does not dispute the fact that it may seek to develop those lots as depicted on those site plans, or some similarly scoped residential development, at some point in the future. There can be no dispute, however, that Applicant has applied for subdivision approval alone in this matter. The application specifically notes that construction of improvements on this land is only contemplated

---

[2] While there are some changes to § 3201.B.1 in the 2025 Regulations, they do not alter this conclusion.

[3] The Town has filed a reply in support of Applicant's motion reaching the same conclusion as the Court.

[4] Further, Appellants' argument that this interpretation means that subdivision applications would be devoid of review or regulation regarding their impacts is inconsistent with the entirety of the Regulations in that it ignores Regulations, Chapter 350, which sets forth multiple standards applicable to the review and approval of subdivision applications.

4

after subdivision approval is obtained. See Ex. 1. That the site plan attached to the application does not state that building envelopes included thereon are specifically for "illustrative purposes only" does not change the scope of the application. The application clearly states that it seeks subdivision approval only and that, while Applicant has been forthcoming in explaining that the ultimate purpose of the subdivision will be to site residential development, construction of improvements on the Property is not presently proposed or applied for. Thus, the inclusion of demonstrative building envelopes on the site plan attached to this application before the Court does not convert the application to one seeking approval for construction and the Court's above conclusion remains valid. See In re Bibby 5-Lot Final Plat Subdivision & Waiver Application, No. 189-11-10 Vtec, slip op. at 19-20 (Vt. Super. Ct. Envtl. Div. Mar. 2, 2012) (Durkin, J.).

For these reasons, the material facts are not in dispute and Applicant is entitled to judgment as a matter of law. The application does not require site plan review. Thus, Applicant's motion in this respect is **GRANTED** and Appellants' motion is **DENIED**.

## II. Question 12 and 13

Questions 12 and 13 address the application's compliance with Regulations § 3506.F.

The application was submitted when the 2024 Regulations were effective. On July 9, 2025 the City adopted the 2025 Regulations. Under the 2025 Regulations, § 3506.F is no longer required. The parties dispute whether Applicant must still comply with the provision despite the amendment.

As a general rule, an applicant's development rights vest under the regulations that were in effect when a complete application was filed. See In re B&M Realty, LLC, 2016 VT 114, ¶ 22, 203 Vt. 438. "The vested-rights doctrine is a constitutional rule that a legislative body 'cannot take away a right that has been vested by a social compact or by a court's judgment.'" In re Wheeler Parcel Act 250 Determination, 2025 VT 28, ¶ 9 n*6 (quoting "Vested-Rights Doctrine," Black's Law Dictionary (12th ed. 2024)). This Court had previously recognized so-called "exceptions" to the vested rights doctrine. See In re Wheeler Parcel Act 250 Determination, No. 22-ENV-00092, slip op. at 26 (Vt. Super. Ct. Envtl. Div. Aug. 2, 2024) (Walsh, J.). The Vermont Supreme Court, on appeal in Wheeler, disagreed with this articulation and instead recognized that "[a]n applicant . . . is not bound by a vested right." Wheeler Parcel, 2025 VT 28, ¶ 9 n*6 (citing In re John A. Russell Corp., 2003 VT 93, ¶¶ 12-13 (mem.)).

In Wheeler, the Vermont Supreme Court recognized that when a municipal plan is amended while an application is pending before the Court on appeal, an applicant may elect to subject its application to the amended municipal plan rather than the municipal plan in effect at the time of their

5

application. Id. at ¶ 10. The Wheeler decision recognized that, while "an applicant retains the right to be evaluated under the plan in effect at the time of application . . . this principle does not require applicants to be bound by" that plan. Id. (internal citation omitted). The purpose of this rule is clear and well-articulated by the Wheeler decision: "It would be inefficient and a waste of administrative and judicial resources to prevent an applicant from relying on amendments to a [municipal] plan if it chooses because nothing prevents an applicant from 'withdraw[ing] an application and resubmit[ting] it . . . to take advantage of . . . subsequently enacted regulations.'" Id. (quoting John A. Russell Corp., 2003 VT 93, ¶ 12). What's more, this practice of "[a]llowing an applicant to elect to be bound by a revised plan instead of requiring an applicant to reapply is in harmony with the Environmental Division's procedural rules that seek to 'ensure summary and expedited proceedings consistent with a full and fair determination' of matters before the court." Id. (citing V.R.E.C.P. 1).

This Court, prior to Wheeler, relied upon similar reasoning to allow applicants in the zoning context to elect to proceed with their application under newer, more favorable zoning regulations following the submission of a complete application. See In re Washburn Remanded CU Denial, No. 21-ENV-00038, slip op. at 4 (Vt. Super. Ct. Envtl. Div. Sept. 1, 2022) (Walsh, J.) (citing In re Laberge Shooting Range JO, No. 96-8-16 Vtec, slip op. at 16-17 (Vt. Super. Ct. Envtl. Div. Aug. 2017) (Walsh, J.)). The logic of Washburn is consistent with the logic and reasoning of Wheeler. It is inconsistent with this Court's rules and generally highly "inefficient and a waste of administrative resources" to decline to allow an applicant to take advantage of such amendments prior to a final ruling on that application.

Appellants attempt to differentiate Wheeler, and assert that Washburn was wrongly decided, by relying upon In re Times & Seasons, LLC, 2011 VT 76. While Times & Seasons did not allow an applicant to take advantage of potentially favorable statutory amendments to Act 250 through 10 V.S.A. § 6087(c), it does not stand for the proposition that an applicant may never elect to take advantage of favorable amendments to regulations. First, in Times & Seasons, although an amendment to Act 250 statutes occurred during the pendency of litigation, a final decision on the application was issued pursuant to law in effect at the time the application was filed. Id. at ¶ 5. Following that decision, applicant submitted a 10 V.S.A. § 6087(c) reconsideration request based, in part, on the premise that it should be able to take advantage of the amended statutes when it had previously declined to do so. Id. The District Commission, this Court on appeal, and ultimately the Vermont Supreme Court concluded that applicant could not have taken advantage of the more favorable law through the reconsideration request. The Vermont Supreme Court recognized that the

6

reconsideration request did not constitute a separate vesting event and did not allow applicant to "take advantage of the laws in effect at the time of the initial application and those in effect at the time of the reconsideration application . . ." Id. at ¶ 11. Times & Seasons recognized that that the assertion was "contrary to our vested rights doctrine, which allows for an applicant on reconsideration to maintain the advantage of favorable findings when laws or regulations have changed unfavorably." Id. (citing In re Paynter 2-Lot Subdivision, 2010 VT 28, ¶ 9, 187 Vt. 637 (mem); Smith v. Winhall Planning Comm'n, 140 Vt. 178, 181–82 (1982)).

Despite Appellants' assertions to the contrary, Wheeler, Washburn, Laberge, Paynter,[5] and Times & Seasons may all be read as a cohesive approach to vested rights that have been consistently applied by this Court and the Vermont Supreme Court on appeal. Indisputably, an application vests in the regulations in effect at the time a complete application is submitted. If, however, relevant regulations are amended prior to final adjudication of the application in a manner an applicant wishes to take advantage of, they may do so. This is in the interest of judicial efficiency and the efficient administration of Vermont's land use permitting regimes. If an applicant declines to move forward under the newly amended regulations and receives an unfavorable final decision under the prior regulations, a motion to reconsider is the improper means to attempt to elect to be subject to the amended regulations. In that instance, a new application would be the proper means of seeking an approved permit.[6]

The 2025 Regulations only require "major subdivisions" to comply with § 3501.F. Chapter 350, the standards, define a "minor subdivision" as:

> [T]he subdivision of land into no more than three (3) parcels and do not include any of the following:

---

[5] Appellants cite Paynter for the proposition that the current state of the law is that the vested rights doctrine is strictly applied to zoning ordinances such that an applicant could never take advantage of favorable amendments to zoning ordinances on appeal. While Paynter may contain language that could, in a vacuum, appear to undercut the Court's reasoning in this case, additional context shows Paynter is not directly on point. In Paynter, an applicant applied for a zoning permit under what all parties believed to be effective zoning regulations. On appeal and after further research, those regulations were deemed to have been improperly adopted and, therefore, were not "in effect." 2010 VT 28, ¶¶ 3, 9. Instead, zoning regulations adopted in the 1980s remained effective. Id. at ¶ 9. The Supreme Court recognized that, as an example illustrative of the general vested rights doctrine, a town could not apply zoning ordinances adopted after the filing of an application, but rights could not vest in an ordinance that was functionally a legal nullity because it was not "in existence" at the time the application was submitted. Id. This illustrative, explanatory sentence, providing context for the conclusion that the Town could not have applied inoperative zoning regulations to the application as the applicant requested, does not stand as precedent precluding the Court's conclusion in this case.

[6] The Court notes that this approach to favorable amendments to regulations "does not entitle an applicant to pick and choose provisions from both the prior and current versions of law" to govern their application. See Washburn, No. 22-ENV-00038, slip op. at 4 (Sept. 1, 2022) (Walsh, J). There is no assertion before the Court that the 2025 Regulations alter any other aspect of the Court's review in this case.

> (a) A new street, extension of a street, or extension of municipal infrastructure such as water or sewer lines;
>
> (b) A Planned Unit Development or otherwise requiring a waiver or variance from the standard requirements of these regulations; or
>
> (c) A subdivision where the provisions of section 3509 apply[.]

Regulations § 3501.B.1.

It is undisputed that the application is for a three-lot subdivision and that none of the other provisions of this subsection apply. As such, the application is one for minor subdivision and § 3506.F does not apply.

Thus, the Court concludes that, due to Applicant's choice for application review under the 2025 Regulations, Regulations § 3506.F is not relevant to this application. The material facts are not in dispute and Applicant is entitled to judgment as a matter of law. Applicant's motion on Question 12 is **GRANTED** and Appellants' motion on the same is **DENIED**.

## Conclusion

For the foregoing reasons, the Court finds that the material facts are not in dispute and Applicant is entitled to judgment as a matter of law on all issues before the Court. Thus, Applicant's motion is **GRANTED** and Appellants' motion is **DENIED**. In so ruling, the Court concludes that the project did not need to go through site plan review to obtain final approval and that Applicant may elect to take advantage of amendments to the Regulations such that, for the reasons set forth above, Regulations § 3506.F does not cover the application before the Court. There being no remaining issues before the Court, the DRB's permit decision below is affirmed.

This concludes the matter before the Court. A Judgment Order accompanies this Decision. Electronically signed February 6, 2026 pursuant to V.R.E.F. 9(D).

Thomas G. Walsh, Judge
Superior Court, Environmental Division

8